IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL JAYNE, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF UTAH, et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTIONS FOR PRELIMINARY INJUNCTION, APPOINTMENT OF COUNSEL, AND CLASS CERTIFICATION** <br><br> Case No. 2:25-cv-245-HCN <br><br> Howard C. Nielson, Jr. <br> United States District Judge |

Michael Jayne has filed several motions in connection with his civil case. He seeks preliminary injunctive relief, appointment of counsel, and class certification. The court denies the motions.

**I.**

Mr. Jayne alleges, in his First Amended Complaint, that several deputies at the Utah County Jail, in addition to staff at the University of Utah Hospital, have violated his civil rights in connection with his detention and medical care he has received—or not received—during and before that detention. Before filing his First Amended Complaint, Mr. Jayne had filed three motions for preliminary relief. *See* Dkt. Nos. 12, 13, 15.

### 1. First "Motion for Emergency Preliminary Injunction"

#### a. Asserted injuries and wrongs

In his first motion for preliminary injunctive relief, Mr. Jayne represents that he has suffered the following injuries and wrongs:

**i. Inadequate dental care.** He has received inadequate dental care because Utah County Jail has a "policy of only pulling teeth, despite x-rays showing Plaintiff has 3 cavities." Dkt. No. 12 at 2–3. He "continues to suffer irreparable harm and extreme pain, throbbing keeping him up at night and extreme sensitivity." *Id.* at 3. A visit to a dentist, "Dr. Garrett," on July 29, 2025 (four months after the original Complaint was filed) yielded no better results. *See id.* at 2–3.

**ii. Legal research documentation.** Mr. Jayne "discovered on 7-29-25 that . . . defendants have been recording and documenting all of Plaintiff's legal research [that] he is conducting on the jail's law library computer," using "his confidential research as a reason to" enter his cell and review all of his "attorney client communications and letters and all his discovery without his consent." *Id.* at 4–5.

**iii. Excessive force.** Around July 29, 2025, certain jail personnel physically attacked him. *Id.* at 7–8.

**iv. Removal of tablet.** Around the same date, certain jail personnel "seized [his] tablet" without "due process." *Id.* at 8–9.

**v. Discrimination against Plaintiff based on disability.** Certain jail personnel "have continued to blatantly discriminate against" Mr. Jayne, preventing him "from having access to the same services as all other [non-disabled] inmates." *Id.* at 9–10.

**vi. Denial of showers, phone calls, recreation, and mattress.** Certain jail personnel "punish" Mr. Jayne by restricting his access to adequate showers, phone calls, and recreation. *Id.* at 10.

**vii. Inadequate medical care.** Certain jail personnel "refuse to provide any medical treatment for [Mr. Jayne's] new injuries from excessive force on 7-29-25." *Id.* at 11–12. No such

2

allegations are found in the Complaint or First Amended Complaint, however, so the court

cannot award preliminary injunctive relief on this basis.

**viii. ADA violations.** Certain jail personnel moved Mr. Jayne "from his ADA compliant

cell as punishment," subjecting him to "more pain and injury by housing him on the concrete

floor." *Id.* at 13-14.

### b. Requests for relief

Mr. Jayne explains and justifies the preliminary injunctive relief he seeks as follows:

"Plaintiff seeks an immediate court order [for] defendants to provide adequate basic dental care."

*Id.* at 2–3. His "life, health and safety is at risk and in peril without this court's immediate

intervention." *Id.* at 12. "[H]e is at a complete loss if this court does not appoint counsel to assist

in correcting these egregious ongoing constitutional violations and ADA violations that are

inflicting undue harm, pain, suffering and anguish," so he "moves this court for an emergency

injunction." *Id.* at 14–15.

### 2. "Second Emergency Motion for Preliminary Injunction"

### a. Allegations of violations involved

In his second motion for preliminary injunctive relief, Mr. Jayne represents that he has

suffered the following injuries and wrongs:

**i. Similar allegations to the first motion for preliminary injunction**. On July 28, 2025,

certain jail personnel read Mr. Jayne's attorney-client-privileged materials, discovery, and legal

research, questioned him about the items they read, physically attacked and injured him, and then

filed a report falsely blaming Mr. Jayne for aggression. *See* Dkt. No. 13 at 4–5. Further, as a

punishment and without due process, Mr. Jayne has been denied outdoor recreation, showers,

3

and his "tablet." *Id.* at 6–7. Finally, Mr. Jayne continues to be denied adequate medical care for the injuries he endured from being attacked around July 28, 2025. *See id.* at 12.

**ii. Denial of books, visits, phone calls, programming, and commissary and law library access**. Certain jail personnel "seized all of [Mr. Jayne's] reading books including his bible," saying "that reading books are privileges and not rights." *Id.* at 5–6. As a punishment and without due process, Mr. Jayne has been denied family visits and phone calls, ability to order food from the commissary, programming, and law library access. *See id.* at 6–7.

**iii. Solitary confinement**. Mr. Jayne asserts he is "in sensory deprived solitary confinement for 24 hours a day, designated as 'high risk,' until [he] leaves" the Utah County Jail. *Id.* at 10–11.

**iv. Mail access**. Because of the position of the kiosk used to read scanned-in mail and Mr. Jayne's shackles, he is "not able to reach the kiosk to touch the buttons." *Id.* at 11. No such allegations are found in the Complaint or First Amended Complaint, however, so the court cannot award preliminary injunctive relief on this basis.

**v. Inadequate medical care.** Mr. Jayne's six-month follow-up appointment after his cancer surgery was canceled without explanation. *See id.* at 11–12. No such allegations are found in the Complaint or First Amended Complaint, however, so the court cannot award preliminary injunctive relief on this basis.

### b. Requests for relief

Mr. Jayne maintains that "will continue to suffer harm without this court's intervention," *id.* at 10, and, more specifically, that "[w]ithout this court's intervention, [he] will continue to suffer physical, physiological, and emotional injuries," *id.* at 16. He requests that the court

4

"[o]rder Defendants to stop violating the ADA and Jayne's constitutional rights," *id.*, and, more concretely, describes the preliminary injunctive relief he seeks as follows:

> 1) Provide Jayne his endocrinologist follow-up cancer care;
> 2) Provide Jayne medical treatment and neck brace for his neck injuries;
> 3) Provide Jayne his tablet & headphones, unless he abuses his tablet & headphones to access email, phone, self-help programs, law library;
> 4) Provide Jayne recreation every day at least an hour outdoor recreation regardless of disciplinary sanctions . . .;
> 5) Having reading books and Bible in Jayne's cell is an absolute right not subject to restriction;
> 6) Having visitation with family is an absolute right as pretrial detainee;
> 7) Having access to call lawyers and make phone calls as pretrial detainee are absolute rights;
> 8) Having access to showers is an absolute right not subject to being restricted as punishment;
> 9) Once any disciplinary sanction is up, Jayne should be allowed to purchase commissary items food etc., just like any other inmate despite being labeled "high risk."
> 10) His access to the tablet cannot be restricted based on a forever label of being "high risk," as a ruse to retaliate & punish Jayne and inflict severe sensory deprivation.
> 11) Restrict defendants from reading, copying, and going through his . . . attorney-client letters, discovery, work product and . . . legal research.
> Without this court's intervention, Jayne will continue to suffer physical, physiological, and emotional injuries. . . .

*Id.* at 13–16.

### 3. "Third Motion for Emergency Preliminary Injunction"

### a. Allegations of violations involved

In his third motion for preliminary injunctive relief, Mr. Jayne represents that he has suffered the following injuries and wrongs:

**i. Similar allegations to the first motion for preliminary injunction**. Various defendants violated Mr. Jayne's federal rights by discriminating against him, based on his disabilities; by denying him "rights and services provided to all other non-disabled inmates of the

5

jail," Dkt. No. 15 at 2–3; by providing inadequate dental care, *see id.* at 4–6; by snooping through his legal research and attorney-client communications without permission around July 29–30, then physically attacking him, *see id.* at 6–10; by moving him to a non-ADA-compliant cell, *see id.* at 11; by taking away his tablet without due process, *see id.* at 11–12; and by denying his access to phone calls, recreation, and showers, *see id.* at 12–13.

**ii. Similar allegations to second motion for preliminary injunction**. Various defendants violated Mr. Jayne's federal rights by canceling his six-month follow-up appointment after his cancer surgery without explanation or rescheduling, *see id.* at 3, and by denying his access to the law library and family visits, *see id.* at 12.

**iii. Cover up of excessive force**. Certain defendants sought to conceal their use of excessive force against Mr. Jayne by falsifying reports, including by falsely representing that Mr. Jayne was the aggressor. *See id.* at 10–11.

**iv. Kiosk restriction**. For thirty days, Defendant Clark suspended Mr. Jayne's access to (a) the computer kiosk, which prevented him from following up on grievances and checking his mail; and (b) his criminal attorneys, which potentially jeopardized the preparation of his defense. *See id.* at 14–16.

### b. Requests for relief

Mr. Jayne seeks preliminary injunctive relief requiring certain defendants to **i.** "schedule immediate follow up cancer care with his endocrinologist, that includes follow up blood testing," *id.* at 4; **ii.** provide "immediate dental care . . . includ[ing] providing [Mr. Jayne] fillings, and crowns or root canals if needed, to relieve his ongoing pain to his 3 teeth," *id.* at 6; and **iii.**

> stop violating Jayne's rights under the ADA, Constitution, and provide Jayne with adequate medical care, dental care, not to restrict Jayne's access to the phone,

particularly to call his lawyers, access to the mail system, access to grieve, access to recreation daily, access to showers to a constitutional standard, and access to all services provided to non-disabled inmates under the ADA.

*Id.* at 19–20.

## II.

"Preliminary injunctive relief—whether a temporary restraining order or a preliminary injunction—'is an extraordinary remedy never awarded as of right.'" *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 697 F. Supp. 3d 1265, 1269 (D. Utah 2023) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). Such relief is "the exception rather than the rule" and will be granted only if "the movant's right to relief [is] clear and unequivocal." *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020) (cleaned up). A party seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Johnson v. Bowles*, 2022 WL 4109687, at \*2 (D. Utah Sept. 8, 2022). "[E]ach of these elements is a prerequisite for obtaining" preliminary injunctive relief. *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016). It follows that a "plaintiff's failure to prove any one of the four preliminary injunction factors renders [his] request for injunctive relief unwarranted." *Village of Logan v. United States Dep't of Interior*, 577 F. App'x 760, 766 (10th Cir. 2014) (unpublished).

The court will construe the motions for preliminary relief, each of which Mr. Jayne signed and verified to be true, as factual declarations offered in support of the relief he seeks. Even so, the court may not consider requests for preliminary injunctive relief that are not based

on claims alleged in the operative complaint. *See Eighth & Jackson Inv. Grp. v. Kaw Valley Bank*, No. 12-4075-RDR, 2013 WL 183753, at *4 (D. Kan. Jan. 17, 2023). As already explained, several of the grounds upon which Mr. Jayne seeks preliminary relief are not found in his First Amended Complaint (or his original one). The court will not consider those grounds in resolving the motions for preliminary injunction.[1]

### A.

The court first considers Mr. Jayne's representations that he was subjected to excessive force on July 29, 2025, *see* Dkt. No. 12 at 7–8, and that deputies later sought to conceal the evidence that he had been subjected to excessive force, *see* Dkt. No. 15 at 10–11.

To justify injunctive relief, a plaintiff generally must demonstrate "expos[ure] to a risk of future harm" that "is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) (cleaned up). By contrast, "past exposure to illegal conduct does not in itself" entitle a plaintiff to "injunctive relief if unaccompanied by any continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983) (cleaned up). After all, "the purpose of preliminary relief is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without its issuance." *Schiermeyer*, 697 F. Supp. 3d at 1271 (cleaned up).

---

[1] For example, Mr. Jayne's representations that his six-month follow-up appointment after his cancer surgery was canceled and that he has otherwise received inadequate cancer follow-up care, *see* Dkt. No. 13 at 11, are nowhere found in his First Amended Complaint even though he submitted that complaint almost six months after raising these representations in a motion for preliminary injunctive relief.

Mr. Jayne has not offered any verified representations or other evidence showing that he is likely to be subjected to excessive force in the future or that the asserted cover-up is still ongoing. It follows that any injuries he suffered from these alleged wrongs can be remedied—if at all—only by damages or other retrospective relief. *See First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017). The court accordingly denies Mr. Jayne's motions for injunctive relief to the extent they rely solely on past conduct, such as the averments of excessive force on July 29, 2025, and the later cover-up, absent evidence that Mr. Jayne continues to suffer ongoing injury from the alleged past misconduct or that the alleged misconduct is likely to recur.

**B.**

The court next considers Mr. Jayne's assertions that deputies at the jail are monitoring his confidential attorney-client communications and otherwise impairing his ability to defend himself against serious pending criminal charges. Whether or not the Sixth Amendment claims on which these assertions appear to rest are meritorious, the court concludes that it lacks jurisdiction to enter the injunctive relief Mr. Jayne seeks.

"[F]ederal courts, except in the most exceptional circumstances, must dismiss suits for declaratory or injunctive relief against pending state criminal proceedings." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (cleaned up). The Tenth Circuit has held that claims seeking injunctions based on "denial of Sixth Amendment rights" are included among those that must be dismissed because "this issue can be resolved as readily in the [underlying state] criminal case as in a suit for an injunction" in federal court. *Sweeten v. Sneddon*, 463 F.2d 713, 715 (10th Cir. 1972).

In other words, Mr. Jayne has access to "an adequate remedy at law in the state trial," where he may assert violations of his right to counsel and, should he be convicted anyway, he would then have the rights of "appeal to the state supreme court" and "to petition the Supreme Court of the United States for review of any federal question." *Id.* It follows that any harm that flows from the asserted violations of Mr. Jayne's right to counsel is not "irreparable . . . in the absence of an injunction," *Winter*, 555 U.S. at 22, which also means that he could not satisfy this requirement for injunctive relief even if the court did have jurisdiction to consider Mr. Jayne's Sixth Amendment claims.

**C.**

As for the remaining grounds on which Mr. Jayne seeks preliminary injunctive relief, the court concludes that he has not demonstrated a likelihood of success on the merits. The court will group these grounds based on the legal claims in the operative complaint with which they appear to correspond.

**1.**

Mr. Jayne maintains that deputies at the Utah County Jail are discriminating against him based on his disability, in violation of the Americans with Disabilities Act. In particular, he argues that deputies "have continued to blatantly discriminate against [him]" by denying him "access to the same services as all other [non-disabled] inmates," Dkt. No. 12 at 9–10, and that deputies removed him "from his ADA compliant cell as punishment" and thus subjected him to "more pain and injury by housing him on the concrete floor," *id.* at 13–14.

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs,

10

or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C.

§ 12132. "This provision extends to discrimination against inmates detained in a county jail."

*Robertson v. Las Animas Cnty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007). "To state a

claim under Title II, the plaintiff must allege that (1) he is a qualified individual with a disability,

(2) who was excluded from participation in or denied the benefits of a public entity's services,

programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by

reason of a disability." *Id.*

Mr. Jayne has not demonstrated a likelihood of success on the merits of his ADA claims

because he has not identified which "services, programs, or activities" he has been excluded

from or denied benefits of because of his disability. *Id.* To the extent he claims he has been

denied services at all, such as being "able to order . . . food commissary items," he does not

attribute the denial to any disability, but rather to his classification as a "high-risk inmate," a

classification he apparently received for only thirty days. Dkt. No. 13 at 7. He accordingly has

not demonstrated that he is likely to succeed in showing that he faces ongoing discrimination *on

account of* his disability.

To the extent he represents that he has been removed from his ADA-compliant cell and

placed in a cell without the accommodations he claims to need—an elevated bed[2] and handlebars

near the toilet—Mr. Jayne apparently attempts to make out a claim for failure to provide a

reasonable accommodation. But he again fails to demonstrate a likelihood of success on the

---

[2] In his first motion, Mr. Jayne appears to imply that he is forced to sleep on the concrete floor. *See* Dkt. No. 12 at 12. In his second and third motions, however, he clarifies that he has a mattress but that it is placed on the floor rather than on an "elevated platform." Dkt. No. 13 at 9; *see also* Dkt. No. 15 at 11.

merits—even if these conditions are still ongoing—because he has not shown that he put the jail on notice that he "requires" such an "accommodation" or that his need for these accommodations is so "obvious" as to excuse his "failure to expressly request" one. *Robertson*, 500 F.3d at 1197 (cleaned up). At most, he argues is that he is "an ADA disabled inmate with a still broken neck" and that "he is in pain trying to stand up" from his mattress on the floor. Dkt. No. 12 at 7–8. But it does not follow from these assertions that deputies should obviously know, absent a request for accommodation, that Mr. Jayne requires an elevated bed or toilet handlebars.

Absent a showing that the jail is on notice of his need for accommodations, Mr. Jayne's assertions regarding the lack of accommodations in his cell may raise, at most, "Eighth [and Fourteenth] Amendment concerns in certain circumstances" regarding constitutionally inadequate conditions of confinement or deliberate indifference to a serious medical need— issues the court will discuss below. *Rashad v. Doughty*, 4 F. App'x 558, 560 (10th Cir. 2001) (unpublished). The court accordingly denies Mr. Jayne's motions to the extent they appear to be based on his ADA claims.

**2.**

Mr. Jayne also maintains that deputies have punished him in various ways without due process, including by taking away his jail-issued tablet, reading books, and Bible; by denying him outdoor recreation, law library access, showers, family visits, and phone calls; and by subjecting him to extended sensory deprivation and solitary confinement. *See* Dkt. No. 13 at 5–7, 10–11. To the extent any of these punishments are ongoing or likely to recur, the court concludes that Mr. Jayne has not demonstrated that he is likely to succeed in establishing a due process violation.

Although the Fourteenth Amendment does protect pretrial detainees from "conditions and restrictions" of detention that "amount to punishment" without due process of law, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Bell v. Wolfish*, 441 U.S. 520, 536–37 (1979). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Id.* at 539. Rather, it must be "arbitrary or purposeless" and not "stem from [the detaining authority's] need to manage the facility in which the individual is detained." *Id.* at 539–40. Further, when a detainee is subjected to "disciplinary action," procedural due process requires "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." *Wolff v. McDonnell*, 418 U.S. 539, 564 (1974).

Most of the conditions of which Mr. Jayne complains likely do not amount to punishment at all. The Supreme Court has held that "double-bunking," for instance—that is, "confining two persons in one room" of a size designed for one inmate—does not constitute punishment that requires due process. *Id.* at 541–42. It follows that restrictions on use of tablets, books, showers, and recreation are unlikely to qualify as punishment either, even if they followed from his classification as a high-risk inmate, unless the restrictions were expressly imposed as sanctions for misconduct—in which case there would likely be no due process violation.

And to the extent Mr. Jayne identifies more serious restrictions, such as prolonged solitary confinement, the court concludes that he is unlikely to succeed in demonstrating that he was subjected to these conditions without due process, let alone that he will be subjected to any similar restrictions in the future. For example, Mr. Jayne attaches to his third motion for preliminary relief an "incident report" from the jail concluding that Mr. Jayne was "guilty of the

offense assault of staff" based on findings that on July 29, 2025, he had "take[n] [a deputy's] glasses and stabbed [the deputy's] stomach three times with one of the 'arms' (temple pieces)" and "attempt[ed] to gouge out [the deputy's] right ey[e]." Dkt. No. 15-1 at 1 (capitalization altered). The incident report states that Mr. Jayne was subjected to 30 days' "isolation time" based on his role in this incident. *Id.* Indeed, Mr. Jayne alleges in his First Amended Complaint that he has since been criminally charged with "aggravated assault," presumably in connection with this incident. Dkt. No. 18 at 188.

Mr. Jayne does not specify whether he invokes substantive or procedural due process, but the court concludes he would be unlikely to succeed in showing a violation of either. As for substantive due process, it is unlikely that he could demonstrate that his solitary confinement is unrelated to a "legitimate governmental objective" given the apparent danger the July 29th incident suggests he poses to deputies and potentially other inmates. *Bell*, 441 U.S. at 539. And Mr. Jayne was plainly offered procedural due process because he was afforded an opportunity to defend himself against the allegations in the incident report, notice of the reasons for the adjudication of guilt, and notice of his "right to appeal the decision of guilt and the sanctions imposed against" him. Dkt. No. 15-1 at 1; *see Wolff*, 418 U.S. at 563–65.

**3.**

The court next considers the grounds Mr. Jayne asserts for preliminary injunctive relief that relate to the conditions of his confinement and the Utah County Jail's alleged indifference to his serious medical needs.

Mr. Jayne asserts that he has been provided inadequate dental care because the dental staff at the jail will treat his cavities only by "pull[ing] teeth or provid[ing] Tylenol." Dkt. No. 15

14

at 5 (cleaned up). He appears to argue that the jail staff's refusal to fill the cavities constitutes "deliberate indifference to [his medical] needs." *Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). His claim is unlikely to succeed, however, because jail "officials do not act with deliberate indifference when they provide medical treatment[,] even if it is subpar or different from what the inmate wants." *Id.* Mr. Jayne has not argued that an extraction would fail to relieve the pain he experiences because of his cavities, and the court accordingly concludes that his refusal to go forward with the extractions is the cause of his allegedly ongoing pain.

Similarly, to the extent Mr. Jayne argues that jail staff are subjecting him to ongoing solitary confinement and denials of showers, reading materials, an orthopedic mattress, and recreation, he likewise fails to show a likelihood of success on the merits. To successfully challenge a "condition of confinement," an "inmate must establish that (1) the condition complained of is sufficiently serious to implicate constitutional protection, and (2) [jail] officials acted with deliberate indifference to [his] health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (cleaned up). "The Eighth Amendment's prohibition on cruel and unusual punishment does not mandate comfortable [jails], and conditions imposed may be restrictive and even harsh." *Id.* at 973 (cleaned up); *see also Howard v. Dickerson*, 34 F.3d 978, 980 (10th Cir. 1994) (explaining that this Eighth Amendment standard also applies to conditions-of-confinement claims brought by pretrial detainees under the Fourteenth Amendment). The Eighth Amendment "requires that prison officials provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Id.* at 974 (internal quotation marks omitted).

15

None of the grounds for preliminary injunctive relief properly asserted in Mr. Jayne's motions appears to involve any deprivation of those "basic necessities." *Id.* Although his conditions may be uncomfortable and unstimulating, he has not convinced the court that he is likely to satisfy the high standard for establishing that he is subject to unconstitutional conditions of confinement without identifying any serious health risks that will follow from the conditions. The only health risk he does identify is his motions is the potential lack of access to the endocrinologist for follow-up cancer treatment, *see* Dkt. No. 15 at 3–4, but this issue was not raised in the original Complaint or the First Amended Complaint, so the court cannot consider it as the basis for a preliminary injunction, *see Eighth & Jackson Inv. Grp.*, 2013 WL 183753, at *4.

**4.**

To the extent Mr. Jayne asserts that he is unable to follow up on grievances because deputies have restricted his access to the kiosk through which he accesses the grievance system, *see* Dkt. No. 15 at 14—and to the extent this restriction is still ongoing—he has not demonstrated a likelihood of success on the merits because there is "no independent constitutional right to state administrative grievance procedures," *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished). And although the "First Amendment protects a prisoner's right to receive mail, [p]rison officials may regulate that right . . . as long as the regulation is reasonably related to legitimate penological interests." *Frazier v. Ortiz*, 417 F. App'x 768, 773 (10th Cir. 2011) (unpublished) (cleaned up). It follows that, to the extent Mr. Jayne argues that being restricted from accessing the kiosk through which he views his scanned-in mail violates this right, he has not demonstrated a likelihood of success on the merits either. He admits that the restriction was

16

limited to 30 days, and it was apparently a product of disciplinary measures imposed after the July 29, 2025 assault of a deputy. *See* Dkt. No. 15 at 13. He also admits in his First Amended Complaint that deputies found "pornographic pictures of women" when they searched his cell on the same date. Dkt. No. 18 at 183.

Based on Mr. Jayne's own admission, the restriction on his access to the kiosk appears to have ended after 30 days and thus can no longer support a claim for injunctive relief. *See Schiermeyer*, 697 F. Supp. 3d at 1269. Even if the dispute were still live, however, the court concludes Mr. Jayne has not shown a likelihood of success of demonstrating, as he must to prevail on this claim, that "the regulation" of his ability to follow up on grievances and his "right to receive mail" through the kiosk was not "reasonably related to legitimate penological interests" of ensuring discipline and barring inmates' access to pornographic materials. *Frazier*, 417 F. App'x at 773.

### III.

The court next considers Mr. Jayne's motions for appointment of counsel. *See* Dkt. Nos. 12, 14, 16, 17.

"As a civil litigant, [the] plaintiff has no Sixth Amendment right to counsel." *Johnson v. Johnson*, 466 F.3d 1213, 1217 (10th Cir. 2006). And the court lacks authority to appoint counsel, although it may invite counsel to provide representation to indigent plaintiffs free of charge.[3] *See*

---

[3] The Tenth Circuit has noted:

> Each year, the district court receives hundreds of requests for legal representation and only a small number of attorneys are available to accept these requests. Accordingly, the district court must use discretion in deciding which cases warrant a request for counsel. To

17

28 U.S.C. § 1915(e)(1) ("The Court may request an attorney to represent any person unable to afford counsel."); *McCleland v. Raemisch*, No. 20-1390, 2021 U.S. App. LEXIS 29490, at \*15 n.3 (10th Cir. Sept. 30, 2021) (unpublished) (explaining that when prisoner-plaintiffs "refer to appointing counsel," they "really refer to a request that an attorney take the case *pro bono*").

"It is not enough" for a plaintiff to argue that he needs help "in presenting his strongest possible case, as the same could be said in any case." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (cleaned up). Instead, in deciding whether to ask volunteer counsel to represent Mr. Jayne without compensation, this court considers a variety of factors, such as "the merits of the litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to present his claims, and the complexity of the legal issues raised by the claims." *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (cleaned up); *accord McCarthy v. Weinberg*, 753 F.2d 836, 838–39 (10th Cir. 1985). Considering the above factors, the court concludes that,

---

do otherwise would deprive clearly deserving litigants of an opportunity to obtain legal representation. The dilemma is unfortunate for litigants [denied counsel]. But the dilemma [i]s not the district court's fault; that dilemma [i]s the product of the court's lack of authority to compel legal representation or to reimburse attorneys for their time.

*Rachel v. Troutt*, 820 F.3d 390, 397 n.7 (10th Cir. 2016); *see also Mallard v. United States Dist. Ct. for S. Dist. of Iowa*, 490 U.S. 296, 298 (1989) (stating that courts may not "require an unwilling attorney to represent an indigent litigant in a civil case"); *Greene v. U.S. Postal Serv.*, 795 F. App'x 581, 583 (10th Cir. 2019) (unpublished) ("In most legal communities, only a limited number of attorneys are willing to take these cases. Thus, the district court [must] decide how to maximize the benefit from these local resources."); *Gross v. GM LLC*, 441 F. App'x 562, 567 (10th Cir. 2011) (unpublished) (observing that courts rarely request counsel to represent parties in civil actions); *Castner v. Colorado Springs Cablevision*, 979 F.2d 1417, 1421 (10th Cir. 1992) (cautioning that indiscriminately appointing "volunteer counsel to undeserving claims will waste a precious resource and may discourage attorneys from donating their time").

18

at least at this time, Mr. Jayne's claims may not be colorable, the issues in this case are not complex, and Mr. Jayne does not appear to be too incapacitated or unable to adequately function in pursuing this matter—especially given that he has now submitted nearly 500 pages of handwritten material. The court accordingly denies without prejudice Mr. Jayne's motions for "appointed" counsel.

## IV.

Finally, the court considers Mr. Jayne's motion for class certification. *See* Dkt. No. 19. The court "must determine . . . whether to certify [an] action as a class action" at "an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). The court concludes it is not yet practicable to resolve Mr. Jayne's motion for class certification because his First Amended Complaint has not yet been screened under 28 U.S.C. § 1915(e)(2)(B) and, as a result, the Defendants have not yet been served with process, answered the First Amended Complaint, or moved to dismiss it. Absent more clarity regarding whether any of Mr. Jayne's claims will progress beyond the pleading stage, the court denies his motion for class certification without prejudice as premature. *See Perez v. Pinon Mgmt., Inc.*, 2013 WL 792693, at *2 (D. Colo. Mar. 1, 2013).

*        *        *

For the foregoing reasons, Docket Number 12, Motion for Emergency Preliminary Injunction and Motion for Appointment of Counsel, Docket Number 13, Second Emergency Motion for Preliminary Injunction, and Docket Number 15, Third Motion for Emergency Preliminary Injunction Based on Ongoing Outrageous Conduct by Defendants, are **DENIED**. Docket Number 14, Motion and Supplemental Facts in Support of Motion for Appointment of

19

Counsel, Docket Number 16, Emergency Motion for Appointment of Counsel with Additional Facts and Exhibits, Docket Number 17, Third Motion for Appointment of Counsel Based on Additional New Facts, and Docket Number 19, Motion for Certification of Class Action and Motion for Appointment of Class Counsel, are all **DENIED** without prejudice to Mr. Jayne later raising the issues presented in these motions. Docket Number 10, Motion to Dismiss One Defendant, is **GRANTED**. Defendant Christine Rose Hinckley is accordingly terminated as a party to this action.

   **IT IS SO ORDERED.**

        DATED this 31st day of March, 2026.

        BY THE COURT:

        _____
        HOWARD C. NIELSON, JR.
        United States District Judge

20